# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| BARNARD PIPELINE, INC.,<br>a Montana Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVELERS PROPERTY CASUALTY<br>COMPANY OF AMERICA,<br><br>Defendant. | CV 13–07–BU–DLC<br><br><br>ORDER |

Before the Court are the parties cross motions for partial summary judgment. Jurisdiction is based on diversity. For the reasons explained, the Court grants Plaintiff's motion for partial summary judgment in part and denies it in part and denies Defendant's cross motion for partial summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Barnard Pipeline, Inc., ("Barnard") brings this action against its insurer, Defendant Travelers Property Casualty Company of America ("Travelers"), for a declaratory judgment that Travelers is obligated to provide coverage for losses claimed by Barnard under a builder's risk policy issued by Travelers to Barnard. Barnard also asserts a claim of insurance bad faith against Travelers. The parties' cross motions seek summary judgment on Barnard's claim

for coverage. Barnard's motion also seeks dismissal of some of Travelers' affirmative defenses.

Barnard contracted with Kern River Gas Transmission Company to complete the Apex Pipeline Expansion Wasatch Loop project ("the Project"), which involved the construction and installation of a 28-mile gas pipeline along a right of way traveling through the Wasatch Mountain Range in Utah. Travelers reviewed the agreement between Kern and Barnard and insured Barnard under a builder's risk policy ("the Policy"). Travelers issued the Policy in October 2010.

The first phase of the Project involved construction and/or improvement of various roads to access the right of way. The first phase of the Project also involved the clearing of vegetation, stripping of topsoil, and leveling and/or grading of the right of way. The object of this excavation work was to get a level, safe, and compacted soil surface on which to perform the next phase of work. Once prepared, the right of way was used as a route of travel for heavy equipment and also used as a working surface for constructing and installing the pipe.

After preparation and excavation of the right of way, the plan of construction was that Barnard would then dig a trench along the right of way, string the pipe along side the trench, perform any bending of the pipe as necessary, weld sections of the pipe together, and then install the pipe in the trench. After the

pipe was installed and the trench backfilled, the right of way was then reseeded and restored to a more "natural" condition.

Through the fall and winter of 2010, the Wasatch Range received an unusually high amount of precipitation  The record high levels of precipitation damaged various access roads Barnard had constructed and made travel and work along the right of way exceedingly difficult.  Barnard was forced to regrade the right of way, and place the saturated soil along the right of way.  The soil could not be removed from the right of way and this additional soil, piled within the right of way, narrowed the available work space.  The heavy precipitation, the saturated soil, and the constricted work space led to various increases in equipment and labor costs.  The precipitation also caused damage to Barnard's various access roads, which required continuous maintenance and repair work.

In December of 2011, Barnard filed claims with Travelers based on damage to the access roads and certain environmental control equipment and losses associated with damage to the right of way.  Travelers reviewed the claim and ultimately paid Barnard for losses associated with damage to the roads and environmental control equipment, but denied Barnard's claim to the extent it sought payment for losses associated with damages to the right of way.  Travelers concluded that the access roads and environmental control equipment were

"Covered Property" under the Policy which had sustained direct physical loss or damage from a "Covered Cause of Loss." Travelers concluded that the right of way was not "Covered Property," but was instead "land" for which coverage was expressly excluded under the Policy. Travelers also denied that the right of way had sustained direct physical loss or damage.

Travelers sent Barnard a reservation of rights letter detailing these coverage determinations on August 23, 2013, approximately eight months after Barnard filed the instant action. In the letter, Travelers details some of the Policy provisions it deems pivotal, and goes on to explain, in part, why Travelers deemed the losses associated with damage to the roads to be covered, while it deemed losses associated with damage to the right of way not to be covered:

> We understand that part of Barnard's claim is for repair to the project access roads. The *project description* on the Declarations page expressly includes 'project access roads' and therefore Travelers is accepting this element of Barnard's claim. . . . Land is not covered property under the policy. The land making up the right-of way is distinguished from project access roads which are expressly identified in the policy Declarations. Further Travelers does not agree that land which becomes saturated is 'damaged.'

*Id.* at 3-4 (emphasis added). Travelers thus paid for Barnard's "expenses to repair only access roads that Barnard constructed or improved for the purposes of this project" and the damage to various environmental control equipment, and denied

the balance of the claim. *Id.* Travelers paid Barnard $1,486,949.00, and denied

the remaining claimed losses which amounted to over $17 million.

The Policy's insuring agreement states: "We will pay for direct physical loss

of or damage to Covered Property from any of the Covered Causes of Loss."

(Doc. 55-1 at 20.) "Covered Property" is defined as "Builder's Risk," *id.*, which is

itself a defined term. *Id.* at 34. "Builder's Risk" is defined in the Policy as

follows:

"Builders' Risk" means:

Property described in the Declarations under "Builders' Risk" owned by you or for which you are legally liable consisting of:

a.    Buildings or structures including temporary structures while being constructed, erected or fabricated at the "job site"

. . .

"Builders' Risk" does not include:

. . .

c.    Land (including land on which the property is located) or water.

*Id.* Thus, "Builder's Risk" (and by extension "Covered Property") is defined in

the Policy and by reference to "Property described in the Declarations under

"Builders' Risk." *Id.*

The Declarations Page reads as follows:

## I.  COVERED PROPERTY AND LIMITS OF INSURANCE

### IM PAK COVERAGE

**"BUILDERS' RISK"**

We cover only the buildings and structures shown below:

LOCATION, DESCRIPTION AND COINSURANCE PERCENTAGE

| "Job Site" | Building Number | Description | [] |
|---|---|---|---|
| 1 | 1 | | |

APEX PIPELINE EXPANSION
WASATCH LOOP SPANNING DAVIS,
SALT LAKE & MORGAN COUNTIES
UTAH, INCLUDING THE PROJECT
ACCESS ROADS AND ALL PIPE
STORAGE SITES IN CONNECTION
WITH THIS PROJECT.

(Doc. 55-1 at 11.)  "Job site" is defined in the policy as "the premises where the 'Builders' Risk' will be permanently located at completion of the construction, installation, erection or fabrication."  *Id.* at 37.  "Project" is defined as "the total construction of all Covered Property at the 'job site.'"  *Id.* at 38.  The terms "buildings" and "structures" are not defined.  However, pursuant to the definition of "Builders' Risk", the terms "buildings" and "structures" include "temporary structures while being constructed erected or fabricated at the 'job site.'" (Doc. 55-1 at 34.)

## Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

## Applicable Law

A federal court sitting in diversity applies the substantive law of the forum state. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In this case, the Court applies Montana law.

**Interpretation of Insurance Contracts**

In Montana, the interpretation of an insurance contract is a question of law. *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 630 (Mont. 2000). In interpreting an insurance contract, the court "will read the insurance policy as a whole, and will if possible, reconcile its various parts to give each meaning and effect." *Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998). The language of an insurance policy governs if it is clear and explicit. *Marie Deonier & Assoc.*, 9 P.3d at 630.

"Any ambiguity in an insurance policy must be construed in favor of the insured and in favor of extending coverage." *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 896 (Mont. 2003). "An ambiguity exists where the contract, when taken as a whole, is reasonably subject to two different interpretations." *Id.* "Whether an ambiguity exists is determined through the eyes of 'a consumer with average intelligence but not trained in the law or insurance business.'" *Id.* (quoting *Holeman*, 961 P.2d at 119).

"[E]xclusions and words of limitation in a policy must be strictly construed against the insurer regardless of whether or not they are ambiguous." *Leibrand v. National Farmers Union Property and Cas. Co.*, 898 P.2d 1220, 1224 (Mont. 1995) (citing *Aetna Ins. Co. v. Cameron*, 633 P.2d 1212, 1214 (Mont. 1981)).

"[E]xclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." *Revelation Industries, Inc. v. St. Paul Fire & Marine Ins. Co.* 206 P.3d 919, 929 (Mont. 2009) (quoting *Wellcome v. Home Ins. Co.*, 849 P.2d 190, 192 (Mont. 1993)).

Montana follows the "reasonable expectations doctrine," which provides that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Fisher ex. rel. McCartney v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 867 (Mont. 2013) (quoting *Transamerica Ins. Co. v. Royle*, 656 P.2d 820, 824 (Mont. 1983)). The reasonable expectations doctrine is inapplicable when the terms of a policy are clear and explicit. *Id.* (citing *Am Family Mut. Ins. Co. v. Livengood*, 970 P.2d 1054, 1059 (Mont. 1998)). Application of the reasonable expectations doctrine is also generally unnecessary where policy provisions are ambiguous, because a finding of ambiguous insurance terms obviates the need for its application. *Id.*

An insured bears the initial burden to establish that a claim falls within the basic scope of the insurance coverage. *Travelers Cas. and Sur. Co. v. Ribi*

*Immunochem Research, Inc.*, 108 P.3d 469, 476 (Mont. 2005). Once the insured meets this initial burden, the insurer has the burden of proving the applicability of an exclusionary clause. *Id.*

**ANALYSIS**

**I.**      **Coverage under the Policy**

Travelers contends there is no coverage for Barnard's claimed losses associated with damage to the right of way for two reasons: (1) the right of way is not "Covered Property", but rather is "land"; and (2) because the right of way is "land," there was no direct physical loss or damage to it. Thus, Travelers' second contention really hinges on the first. That is, if the Court determines that the right of way is not "land," but is "Covered Property," Travelers loses its argument that the right of way did not sustain direct physical loss or damage.[1] Travelers does not dispute that the historic precipitation levels are a "Covered Cause of Loss."

Barnard contends that the right of way is "Covered Property." It notes that "Covered Property" is defined as "Builders' Risk" which includes all buildings and structures, even temporary structures, described on the Declarations page. Barnard emphasizes the expansive description of "Builders' Risk" provided on the Declarations page. Barnard asserts that the work required to prepare the right

---

[1]   Notably, Travelers determined that the access roads, which were subject to the same precipitation event, suffered direct physical loss or damage.

way was extremely costly and notes that the cost of this work was included in the limits of insurance and the calculation of the premium Barnard paid for the Policy. Barnard points out that the work done on the right of way altered the natural state of the land and served a critical function in completing the Project. Once cleared, excavated, and graded, the right of way became both a lane of travel for heavy equipment and a work platform for construction and installation of the pipe.[2] Ultimately, Barnard asserts that the cleared, excavated, and leveled right of way meets both the legal and common definition of "structure," and thus should constitute "Covered Property" under the Policy.

Travelers contends that the clearing, excavating, and leveling of the ground where the pipe was to be laid did not transform the land into a structure, as that term is commonly understood. Travelers contends that the Court need not look to a dictionary definition of the word "structure" to resolve this issue. Travelers notes that the right of way, even after the work performed on it, was comprised only of soil. Travelers further contends that applying the definition of structure urged by Barnard is inconsistent with the Policy when viewed as a whole, because the Policy provides additional coverage for "'Builders' Risk' Site Preparation,"

---

[2] Though Travelers protests the characterization of the right of way as a "temporary work platform" or "access road," it does not contest the fact that heavy equipment used the right of way as a lane of travel or the fact that much of the work of stringing, bending, and constructing the pipeline occurred along the right of way.

which would be rendered unnecessary if excavating a job site transformed the site into a structure.  (Doc. 55-1 at 21.)

The Court concludes that Barnard has the better argument.  The problem with Travelers' position is that it runs contrary to the canons of interpretation of an insurance contract, in particular, that any ambiguities must be construed against the insurer and in favor of the insured, and that exclusions must be narrowly and strictly construed against the insurer.  *Hardy*, 67 P.3d at 896; *Revelation Industries, Inc.*, 206 P.3d at 929.  Furthermore, the Court is not persuaded that the work done to the right of way did not render it a structure, or temporary structure, as that term is understood pursuant to the provisions of the Policy.

The Montana Supreme Court has approved the use of dictionaries to interpret the terms of an insurance contract.  *Farmers Union Mut. Ins. Co. v. Horton*, 67 P.3d 285, 289 (Mont. 2003).  Travelers does not, and cannot, dispute that the cleared, excavated, and leveled right of way meets the definition of "structure" as defined in legal and common dictionaries.  The Policy does not define the term "structure."  As the author of the Policy, Travelers was obligated to draft a more restrictive definition of the term, if the common and legal definition of the term was to be regarded as too expansive.  Black's Law Dictionary defines "structure" as "[a]ny construction, production, or piece of work

artificially built up or composed of parts purposefully joined together." Black's Law Dictionary 1559 (9th Ed.). Webster's New World Dictionary defines structure as "something built or constructed, as a building or dam." Webster's New World Dictionary 429 (4th Ed.). These definitions are not inconsistent with what one would typically consider to be a structure.

The right of way existed as raw land before Barnard began working there. Barnard then extensively changed the inert natural state of this land, through the use of various heavy machinery, turning it into something "artificial" and "purposely joined together," free of vegetation, level, compact, and more useful for Barnard's construction purposes. Barnard used the cleared right of way as a place to perform various work tasks and as a lane of travel for its machinery. Indeed, as Travelers admits, the photo of the excavated right of way submitted with Barnard's brief appears very much like a large road. Though the right of way may not be the first thing that comes to mind when one thinks of a "structure," the excavated right of way cannot be easily excluded from the general category of things falling within the broad meaning of the word.

The Policy does not limit a broad definition of the word "structure." Indeed, the Policy invites the reader to be flexible with one's ordinary understanding of the terms "buildings and structures." According to the definitions section of the

Policy, "buildings or structures including temporary structures" is part of what is meant by the term "Builders' Risk," which in turn is what is meant by "Covered Property." (Doc. 55-1 at 34.) Though it may be difficult to think of "Builders' Risk" as synonymous with "buildings and structures," that is what the Policy requires. "Builders' Risk" is then further defined by reference to the Declarations page.

On the Declarations page, under the heading of "Covered Property," "Builders' Risk" appears. Below this, the Declarations page states that "We cover only the buildings and structures shown below." Given this, it would be reasonable to expect to find a list of the "buildings and structures" that the Policy covers. In this case, however, instead of a list of addresses for, or specific descriptions of, certain buildings and structures, one finds, under the heading "Description," the following language: "APEX PIPELINE EXPANSION WASATCH LOOP SPANNING DAVIS, SALT LAKE & MORGAN COUNTIES, UTAH, INCLUDING THE PROJECT ACCESS ROADS AND ALL PIPE STORAGE SITES IN CONNECTION WITH THIS PROJECT." (Doc. 55-1 at 11.) Thus, the Declarations Page presents the "buildings and structures shown below" in a manner that includes the entire Project. It is also notable that on the same line as the expansive project description, one finds that the Policy identifies

only "1" building.  *Id.*

The Policy thus appears to cover, in a unified, all-encompassing manner, the Project as described.  The "Covered Property" is the "Builders' Risk," which is in turn "the buildings and structures" as described in the expansive, all-caps language on the Declarations Page.

Indeed, Travelers' reservation of rights letter refers to the description on the Declarations page as "[t]he project description on the Declarations page."  (Doc. 31-1 at 3.)  Though Travelers' statement of undisputed facts suggests differently – that the all-caps language describes the "job site" (Doc. 47 at 10), rather than the project description – the deposition testimony cited for this proposition does not support Travelers' assertion.  The testimony of Ms. Young stands for the proposition that the all-caps language describes *both* the "job site" and the "project."  Given that the "job site" is apparently not covered by the Policy (Doc. 55-1 at 37), and that the "project" is covered (*id.* at 38), this is a confusing explanation indeed.

The Court concludes that the Policy's Declarations page and definition of "Builders' Risk," when read for the purpose of determining what is to be considered "Covered Property," is ambiguous in this case.   Accordingly, the Court will "interpret any doubts in coverage strictly against the insurer."  *Brabeck*

*v. Employers Mut. Cas. Co.*, 16 P.3d 355, 357 (Mont. 2000). The Court thus holds

that the right of way, after it had been cleared, excavated, and leveled constituted a

"structure," and was therefore "Covered Property" under the Policy.

Furthermore, the Court holds that the land exclusion, which must be

construed narrowly and strictly against Travelers, does not preclude coverage.

Construing the exclusion narrowly, the land exclusion does not clearly exclude

coverage for the right of way after it had been intentionally and systematically

altered from its natural state in order to improve its functional capacity for

completion of the Project. The conclusions of other courts dealing with similar

issues are in accord with the Court's reasoning here. *Klockner Stadler Hurter,*

*Ltd. v. Insurance Co. of the St. of Penn.*, 780 F.Supp. 148, 157-58 (S.D. N.Y.

1991) (holding that land exclusion did not preclude coverage for damage to

excavated site); *M.A. Mortensen Co. v. Indemnity Ins. Co. of North America*, 1999,

WL 33911358, **6-7 (D. Minn. Dec. 23, 1999) (holding that compacted soil used

in subgrade did not constitute "land" as term was used in exclusion).[3]

Finally, the Court is not persuaded that interpreting the Policy in this

manner is impermissibly inconsistent with the Policy's additional coverage for

Site Preparation. First, the additional coverage for site preparation cannot serve to

_____

[3] The Court notes that case law on point is particularly sparse, but that Travelers has cited
no cases to the Court that support its reading of the land exclusion.

exclude coverage otherwise available under the Policy's basic grant of insurance. To do so would turn the protective purpose for purchasing insurance on its head. Second, the Court finds persuasive Barnard's position that this additional coverage generally pertains to instances in which damage to a building or structure gives rise to the need for additional site preparation. Here, the Court finds that the right of way constitutes a "structure" under the Policy.

The Court further holds that the right of way sustained "direct physical loss or damage" as those terms are used in the Policy. Travelers, as noted above, does not really contest otherwise. Travelers' argument in this regard is premised on the proposition that "land" cannot be damaged, but the Court rejects Travelers' assertion that the right of way remained "land" after it was cleared, excavated, leveled, and used in the course of construction. Furthermore, the Court agrees with Barnard that the phrase "direct physical loss or damage" suggests "that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state." *Dupuy v. USAA Cas. Ins. Co.*, 2012 WL 832291, *2 (M.D. La. Mar. 9, 2012) (quoting *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-72 (5th Cir. 1990)). The damage to the right of way from the extreme precipitation event meets this definition of direct "physical loss or damage."

Accordingly, the Court holds that the Policy provides coverage for damage

to the right of way. Barnard's motion will therefore be granted to the extent it seeks a judicial declaration regarding coverage.

## II.    Travelers' Affirmative Defenses

Barnard moves for summary judgment on several of Travelers' affirmative defenses. Barnard contends that it is entitled to summary judgment on Travelers' affirmative defenses because Travelers can point to no evidence to support the defenses. Barnard contends that Travelers was obligated to raise the issues raised by its affirmative defenses in its reservation of rights letter, and that Travelers failed to do so. Travelers contends that issues of fact remain with respect to many of its affirmative defenses. Travelers contends that it had no obligation to include all potential defenses in its reservation of rights letter.

As an initial matter, the Court concludes that Travelers was not obligated to detail all potential defenses in its reservation of rights letter and that it has not waived nor is estopped from asserting other policy defenses. "Waiver is a voluntary and intentional relinquishment of a known right or claim." *Edwards v. Cascade County*, 212 P.3d 289, 295 (Mont. 2009). Travelers' reservation of rights letter expressly reserves Travelers' right to pursue additional applicable policy defenses. Thus, Barnard has always been on notice of Travelers' intention to pursue all available policy defenses.

In addition, while Montana law requires an insurer to "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim," Mont. Code Ann. § 33-18-201(14), an insurer does not waive all policy defenses that are not included in a reservation of rights letter. *Portal Pipe Line Co. v. Stonewall Ins. Co.*, 845 P.2d 746, 749-750 (Mont. 1993); *EOTT Energy Operation Ltd. Partnership v. Certain Underwriters at Lloyd's of London*, 59 F.Supp.2d 1072, 1078 (D. Mont. 1999). In *Portal Pipe Line*, the Montana Supreme Court rejected the contention that an insurance company is limited to those defenses detailed in a reservation of rights letter when the insured fails to demonstrate prejudice. *Portal Pipe Line Co.*, 845 P.2d at 750. In so holding, the Court in *Portal* distinguished the situation before it from that presented in *Safeco Insurance Company v. Ellinghouse*, 725 P.2d 217 (Mont. 186), wherein an insurer was estopped from denying coverage to its insured when the insurer had initially accepted coverage of the claim and assumed defense of the claim without reservation. Here, by contrast, Barnard has always been on notice of Travelers' intention to assert all applicable policy defenses. Accordingly, Barnard fails to demonstrate that Travelers has waived, or should be estopped from, asserting defenses beyond those detailed in Travelers' reservation of rights letter.

### A.   First Affirmative Defense: Failure to State a Claim.

Travelers does not contest Barnard's motion for summary judgment with respect to Travelers' first affirmative defense, that Barnard has failed to state a claim for which relief may be granted.  Accordingly, the motion is deemed well-taken and the Court strikes Traveler's first affirmative defense.

### B.   Second Affirmative Defense: Failure to Mitigate.

Barnard contends it is entitled to summary judgment on Travelers' failure to mitigate defense.  Barnard contends that deposition testimony reveals that Travelers has no evidence to support this defense.  Travelers counters that disputed issues of fact remain.  In particular, Travelers asserts that Barnard's decision never to pursue potential contract rights in its contract with Kern exhibit a failure to mitigate damages.

The Court concludes that summary judgment on this defense is inappropriate.  First, Barnard has not explained why the mitigation defense should be dismissed with regard to damages Barnard is claiming beyond those owed to it under the Policy.  Second, Travelers points to provisions in Barnard's underlying contract with Kern which arguably could have been utilized by Barnard to avoid or reduce some of Barnard's damages. The record does not reveal that only one conclusion can be reached with regard to this issue.  Accordingly, Barnard's

motion with respect to Travelers' second affirmative defense will be denied.

**C.    Third Affirmative Defense: Extent of Damages Claimed.**

Barnard argues that Travelers' agents admitted in deposition testimony that Travelers has no evidence to dispute the damages Barnard has claimed for the damage to the right of way.  Travelers disputes this characterization of the deposition testimony, and cites its expert reports in which they opine that Barnard's claimed damages are inflated and overstated.  In addition, Travelers contends that once it decided there was no coverage for losses associated with damages to the right of way, it had no duty to, and did not, further investigate the details of Barnard's claim.  Travelers asserts it retains the right to investigate and contest Barnard's claimed losses.

Given Travelers' expert reports and the circumstances of Travelers' coverage determination, the Court concludes that disputed issues of fact remain with respect to the extent of damages claimed by Barnard.  Summary judgment as to Travelers' third affirmative defense is therefore unwarranted.

**D.    Fourth Affirmative Defense: Travelers met its contractual obligations**.

Barnard asserts that the Court should strike Travelers' fourth affirmative defense because Travelers fails to cite any specific provision which supports its defense.  Travelers does not specifically address Barnard's arguments with respect

to this defense other than to assert that no coverage for Barnard's claims was due because of the land exclusion. Travelers' arguments about coverage have been rejected. Therefore, the Court strikes the fourth affirmative defense.

### E. Fifth Affirmative Defense: Plaintiff's recovery is limited by various provisions of the Policy.

Barnard contends it is entitled to summary judgment on Travelers' fifth affirmative defense which states that Barnard's recovery is limited by the terms of the Policy. Here, Barnard contends that Travelers' citation to only two Policy provisions in its denial letter limits Travelers' ability to use other policy defenses in this litigation. As noted above, Travelers' reservation of rights letter expressly reserves all policy defenses. Furthermore, as discussed above, Travelers has submitted expert reports which raise issues of disputed fact with respect to the damages claimed by Barnard. Travelers retains the right to assert appropriate policy defenses applicable to the claimed losses associated with damage to the right of way. Accordingly, the Court denies Barnard's motion with respect to Travelers' fifth affirmative defense.

### F. Eighth Affirmative Defense: Plaintiff failed to meet all of its contractual obligations under the Policy.

Here again, Barnard cites the reservation of rights letter as grounds to dismiss Travelers' defense that Barnard failed to meet all of its contractual

obligations.  As previously explained, Travelers was not obligated to cite any and all policy defenses in its reservation of rights letter.  The letter expressly reserves the right to raise other policy defenses  Furthermore, Travelers contends that there are questions of fact with respect to Barnard's contractual obligations to provide prompt notice of claims, to cooperate with Travelers investigation into claims, to submit to an examination under oath, and to provide a description of how, when and where the loss occurred.  Travelers contends Barnard failed to give notice of its loss for at least two months after the weather event began, resisted and interfered with Travelers' examination, and was slow in providing support for its claimed losses.  Travelers thus contends that issues of fact remain with respect to Barnard's conduct relative to its contractual obligations and Barnard's bad faith claim.  The Court concludes that disputed issues of fact remain with respect to Travelers' eighth affirmative defense.  Summary judgment on Travelers' eighth affirmative defense is therefore denied.

IT IS ORDERED that Barnard's motion for partial summary judgment (Doc. 30) is GRANTED IN PART AND DENIED IN PART.  Barnard's motion is GRANTED to the extent it seeks a judicial declaration that the Policy provides coverage for damage to the right of way.  Barnard's motion is also GRANTED with respect to Travelers' first and fourth affirmative defenses.  Barnard's motion

is DENIED in all other respects.

IT IS FURTHER ORDERED that Travelers' first and fourth affirmative defenses are STRICKEN.

IT IS FURTHER ORDERED that Travelers' motion for partial summary judgment (Doc. 45) is DENIED

DATED this 13th day of March 2014.

Dana L. Christensen, Chief District Judge
United States District Court