IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| BARNARD PIPELINE, INC., a Montana Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Defendant. | CV 13–07–BU–DLC <br><br> ORDER |

Before the Court is Plaintiff Barnard Pipeline, Inc.'s motion to compel documents and Defendant Travelers Property Casualty Company of America's motion for a protective order. Barnard seeks to compel documents from Travelers that have been withheld on the basis of attorney-client privilege and work product doctrine. Travelers seeks a protective order precluding the deposition of Ron Clark, Travelers' counsel in this matter. For the reasons explained below, the Court orders that Travelers submit certain withheld documents for an *in camera* review and denies the balance of Barnard's motion, and reserves ruling on Travelers' motion until after the Court conducts its *in camera* review of the documents.

**Factual and Procedural Background**

In 2010, Barnard contracted with Kern River Gas Transmission Company to complete the Apex Pipeline Expansion Wasatch Loop project ("the Project"), which involved the construction and installation of a 28-mile gas pipeline along a right of way traveling through the Wasatch Mountain Range in Utah. In association with the Project, Barnard purchased a "builder's risk" insurance policy from Travelers. This litigation stems from a dispute regarding coverage of Barnard's claimed losses associated with damage to the right of way. In addition to seeking a declaratory judgment regarding coverage, Barnard brings a claim of bad faith insurance claims handling against Travelers under Montana's Unfair Trade Practices Act, Mont. Code Ann §§ 33-18-201 *et seq*. The Court recently granted partial summary judgment to Barnard on an issue concerning coverage. The current discovery dispute pertains to Barnard's bad faith claim.

Barnard seeks to depose Travelers' counsel, Ron Clark ("Clark"), and to compel production of documents appearing in Travelers' claims file that were either generated by or sent to Clark. Travelers contends it is entitled to a protective order prohibiting the deposition of Clark and that the documents at issue are not discoverable pursuant to the attorney-client privilege and the work product doctrine.

A time line of events is necessary to bring the issues at bar in focus. Because of unprecedented precipitation levels in the Wasatch Range in the fall and winter of 2010, Barnard experienced problems with the Project soon after construction began. In December 2011, Barnard notified Travelers of its claim for coverage, and Dennis Luoma ("Luoma") was assigned to adjust the claim.

Luoma investigated the claim and made periodic entries in his General Adjuster Activity Log reflecting the progress of his investigation. On June 27, 2012, Luoma and Barnard's General Counsel Pat Brown met to discuss Barnard's proof of loss statement. At the meeting, Luoma requested further documentation regarding Barnard's claim. Barnard appears to have submitted the requested documentation on July 19, 2012 and expected a claims decision would be forthcoming within 60 days of the receipt of this additional documentation.

Travelers, however, did not render its decision within 60 days of receiving the additional documentation. On September 5, 2012, Travelers retained attorney Clark. Luoma testified in his deposition that Clark was initially hired in order to conduct an Examination Under Oath ("EUO") of a Barnard representative. According to Luoma's Activity Log, however, by October 24, 2012, Clark was performing "a coverage analysis" for Travelers. (Doc. 60-4 at 7.) Very few substantive entries appear in Luoma's adjuster activity log after this date.

Barnard filed suit against Travelers on January 15, 2013, seeking a declaratory judgment and tort damages for bad faith claims handling. Barnard served Travelers with its amended complaint on February 22, 2013. In March of 2013, Travelers conducted an Examination Under Oath ("EUO") of the Barnard representative. Clark conducted the EUO. Travelers finally denied Barnard's claim for coverage for damage to the right of way on August 23, 2013. Clark drafted the denial letter, though it appears some changes were made to the draft before Travelers' representatives signed and sent the letter to Barnard.

The parties dispute the role that Clark played in the claim handling process. Barnard asserts that Luoma "outsourced to Clark" the claim handling investigation once Travelers retained Clark. (Doc. 60 at 7.) Travelers counters that it hired Clark merely to provide legal advice and that any fact investigation Clark may have performed was strictly in association with his rendition of legal advice.

The record does not reveal the precise contours of Clark's activities during the claim handling process or whether or to what degree Clark was engaged in any factual investigation. Barnard points to the lack of substantive notations in the Adjuster Activity Log after Luoma's meeting with Brown to support its argument that Clark was at the center of the claims investigation once Travelers retained him. Barnard asserts that the absence of any notations is significant because

Travelers' internal policies require adjusters to fully document their claim investigation such that the claim file "should speak for itself." (Doc. 60-5 at 8.) Meanwhile, Travelers cites the deposition testimony of Luoma where he stated that because of "an oversight" not all of his investigative activities were logged in the activity log and that he continued to perform many investigative activities after Travelers retained Clark. (Doc. 70-1 at 3.)

## APPLICABLE LAW

A federal court sitting in diversity applies the privilege law of the forum state, *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008), and applies federal law in determining the application of the work product doctrine. *Moe v. System Transport, Inc.*, 270 F.R.D. 613, 622 (D. Mont. 2010). Here, the Court applies Montana privilege law and applies federal law with respect to the work product doctrine.

### I. Attorney-Client Privilege

Montana's attorney-client privilege statute provides as follows:

(1) An attorney cannot, without the consent of the client, be examined as to any communication made by the client to the attorney or the advice given to the client in the course of professional employment.

(2) A client cannot, except voluntarily, be examined as to any communication made by the client to the client's attorney or the advice given to the client by the attorney in the course of the attorney's professional employment.

Mont. Code Ann. § 26-1-803. Absent a voluntary waiver or an exception, the attorney client privilege "applies to all communications from the client to the attorney and to all advice given to the client by the attorney in the course of the professional relationship." *Palmer*, 861 P.2d at 906. The privilege applies "only to communications in which legal advice is sought by the client, or legal advice is given by the attorney." *Moe*, 270 F.R.D. at 622. The attorney-client privilege protects confidential communications between the attorney and the client in order to encourage clients "to be open and forthright with their attorneys" and to ensure "that attorneys are free to give accurate and candid advice without fear that the advice will later be used against the client." *Palmer*, 861 P.2d at 906.

"The attorney-client privilege applies with equal force in 'bad faith' insurance litigation as in all other civil litigation." *Id.*, 185 F.R.D. at 294. But the privilege does not apply when the insurer's attorney represents the interests of both the insured and the insurer. *Palmer by Diacon v. Farmers Ins. Exchange*, 861 P.2d 895, 906 (Mont. 1993); *Jessen v. O'Daniel*, 210 F.Supp, 317, 331-32 (D. Mont. 1962); *see also Aetna Cas. Surety Co. v. Superior Court*, 200 Cal.Rptr. 471,473-74 (Cal. App. 1984).

While the privilege applies equally in insurance litigation, in insurance bad faith cases when an attorney serves as coverage counsel, the "line between what

Mont. Code Ann. § 26-1-803. Absent a voluntary waiver or an exception, the attorney client privilege "applies to all communications from the client to the attorney and to all advice given to the client by the attorney in the course of the professional relationship." *Palmer*, 861 P.2d at 906. The privilege applies "only to communications in which legal advice is sought by the client, or legal advice is given by the attorney." *Moe*, 270 F.R.D. at 622. The attorney-client privilege protects confidential communications between the attorney and the client in order to encourage clients "to be open and forthright with their attorneys" and to ensure "that attorneys are free to give accurate and candid advice without fear that the advice will later be used against the client." *Palmer*, 861 P.2d at 906.

"The attorney-client privilege applies with equal force in 'bad faith' insurance litigation as in all other civil litigation." *Id.*, 185 F.R.D. at 294. But the privilege does not apply when the insurer's attorney represents the interests of both the insured and the insurer. *Palmer by Diacon v. Farmers Ins. Exchange*, 861 P.2d 895, 906 (Mont. 1993); *Jessen v. O'Daniel*, 210 F.Supp, 317, 331-32 (D. Mont. 1962); *see also Aetna Cas. Surety Co. v. Superior Court*, 200 Cal.Rptr. 471,473-74 (Cal. App. 1984).

While the privilege applies equally in insurance litigation, in insurance bad faith cases when an attorney serves as coverage counsel, the "line between what

Mont. Code Ann. § 26-1-803. Absent a voluntary waiver or an exception, the attorney client privilege "applies to all communications from the client to the attorney and to all advice given to the client by the attorney in the course of the professional relationship." *Palmer*, 861 P.2d at 906. The privilege applies "only to communications in which legal advice is sought by the client, or legal advice is given by the attorney." *Moe*, 270 F.R.D. at 622. The attorney-client privilege protects confidential communications between the attorney and the client in order to encourage clients "to be open and forthright with their attorneys" and to ensure "that attorneys are free to give accurate and candid advice without fear that the advice will later be used against the client." *Palmer*, 861 P.2d at 906.

"The attorney-client privilege applies with equal force in 'bad faith' insurance litigation as in all other civil litigation." *Id.*, 185 F.R.D. at 294. But the privilege does not apply when the insurer's attorney represents the interests of both the insured and the insurer. *Palmer by Diacon v. Farmers Ins. Exchange*, 861 P.2d 895, 906 (Mont. 1993); *Jessen v. O'Daniel*, 210 F.Supp, 317, 331-32 (D. Mont. 1962); *see also Aetna Cas. Surety Co. v. Superior Court*, 200 Cal.Rptr. 471,473-74 (Cal. App. 1984).

While the privilege applies equally in insurance litigation, in insurance bad faith cases when an attorney serves as coverage counsel, the "line between what

constitutes claim handling and the rendition of legal advice is often more cloudy than crystalline." Thus, "the question of whether a communication falls within the attorney-client privilege can often be difficult because of the investigatory nature of the insurance business." *HSS Enterprises, LLC v. Amco Ins. Co.*, 2008 WL 163669, *3 (W.D. Wash. Jan. 14, 2008). "[T]o the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply." *Id.* This is consistent with the rule that the privilege only applies to communications in which legal advice is given. Furthermore, to the extent that the insurer or its representative communicates non-confidential information to the attorney, i.e. basic facts that the insurer discovers pursuant to its statutory duty to investigate a claim, such information cannot be protected from discovery by a claim of attorney-client privilege. Courts must make these distinctions on a case-by-case (or document-by-document) basis, mindful that "the privilege must be construed narrowly because it obstructs the truth-finding process." *American Zurich Ins. Co. v. Montana Thirteenth Judicial Dist. Court*, 280 P.3d 240, 245 (Mont. 2012).

An insurer in a bad faith case waives the attorney-client privilege by relying on advice of counsel as a defense to a bad faith charge. *Id.*, 861 P.2d at 907. However, an insurer has not asserted the defense of advice of counsel, and

therefore has not waived the attorney-client privilege, simply because the insurer's representative admits in response to a question on cross-examination that he/she listened to advice of counsel in deciding to deny an insured's claim. *Id.* To waive the privilege, the party "must affirmatively raise the issue involving privileged communications." *Dion v. Nationwide. Mut. Ins. Co.*, 185 F.R.D. 288, 295 (D. Mont. 1998). But, to be waived, "the issue need not be raised as an affirmative defense or by the party's pleadings." *Id.*

## II. Work Product Doctrine

The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R.Civ.P. 26(b)(3)(A). "The primary purpose of the work product doctrine is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (quoting *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)).

To be protected under the work product doctrine, the document must be "prepared in anticipation of litigation." "[D]ocuments prepared in the ordinary course of business are not protected by the work-product doctrine because they

would have been created regardless of the litigation." *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545, 549 (W.D. Wash. 2004). The party withholding documents on the basis of the work product doctrine has the burden to show that each document withheld was "prepared or obtained because of the prospect of litigation." *Moe*, 270 F.R.D. at 625 (quoting *Dion*, 185. F.R.D. at 292 n. 1).

In the insurance context, materials prepared as part of the ordinary course of business in investigating a claim are not covered by the work product doctrine. *Id.*, 270 F.R.D. at 624-25 (citing *Bronsink v. Allied Prop. and Cas. Ins.*, 2010 WL 786016, *2 (W.D. Wash. 2010)). However, "where a sufficient degree of adversity arises between the insurer and the insured," the nature of the insurer's investigation and other claim handling activity may "develop into an activity undertaken in anticipation of litigation." *Id.*, 270 F.R.D. at 625.

Often, in insurance bad faith litigation, the work product doctrine does not apply to materials that are generated before the insurer has formally denied the insured's claim because such materials are prepared as part of the ordinary course of business. *Id.* However, once the insured has filed a bad faith claim against its insurer, the requisite degree of adversity exists such that the insurer's subsequent investigation and claim handling activities cannot be said to be undertaken as part of the insurer's ordinary course of business. Accordingly, the work-product

doctrine applies to documents generated by an insurer after the insured files a bad faith claim against its insurer, even when the insurer has not yet formally denied the insured's claim. Once the insured files a bad faith lawsuit against its insurer, all documents generated by the insurer are generated "in anticipation of litigation" and are not part of the ordinary course of business.

Work product protection, however, is not absolute and a party may discover work product materials if it can establish the relevance of the materials, the requisite need for the materials, and the requisite hardship in obtaining the materials by other means. Fed.R.Civ.P. 26(b)(3)(A)(i)-(ii). To obtain ordinary work product materials, the requesting party must show a "substantial need" for the materials. *Id*. To obtain opinion or mental impression work product as defined in Fed. R.Civ.P. 26(b)(3)(A)(ii), the requesting party must show a "compelling or overwhelming need" for the materials. *Moe*, 270 F.R.D. at 626-27 (citing *Dion*, 185 F.R.D. at 292-93; and *Holmgren*, 976 F.2d at 577).

Because an insurer's "claims file reflects a unique, contemporaneous record of the handling of the claim" that cannot be obtained elsewhere, *id.*, 270 F.R.D. at 627 (quoting *Dion*, 185 F.R.D. at 293), and because the "strategy, mental impressions and opinion of the insurer's agents concerning the handling of the claim are directly at issue" in an insurance bad faith claim, *id.* (quoting *Holmgren*,

976 F.2d at 577), the need for such materials is compelling, and both ordinary and opinion work product protection is generally overcome in bad faith litigation when asserted by the insurer's agents. *Id.*

However, "opinion work product of an insurer's attorneys must be distinguished from that of the insurer's representatives responsible for denying the underlying claim." *Id.*, 270 F.R.D. at 628 (citing *Dion*, 185 F.R.D. at 293). This is because unless the insurer relies on the advice of counsel defense "the insurer, not the attorneys, [makes] the ultimate decision to deny coverage," and therefore "attorney mental impressions and opinions are not directly at issue" in insurance bad faith claims. *Palmer*, 861 P.2d at 912. The insured cannot establish a compelling need for opinion work product of an insurer's attorneys and the work product doctrine thus protects such materials from disclosure. *Id.*; *Moe*, 270 F.R.D. at 628.

## ANALYSIS

Barnard seeks to compel production of "all correspondence either, to, from or carbon copying Ron Clark relating to Barnard's claim prior to August 23, 2013," the date when Traveler's formally denied Barnard's claim. Travelers has withheld production of these documents on the basis of the attorney-client privilege, the work product doctrine, or both.

## I. Waiver

Barnard asserts that Travelers has waived the right to claim the attorney-client privilege and/or work product protection with respect to the requested documents because Travelers has asserted an advice of counsel defense. Travelers responds that it has not asserted an advice of counsel defense and that its representatives' answers to questions posed by Barnard in depositions are insufficient to establish that it is asserting an advice of counsel defense. The Court agrees with Travelers that it has not waived the right to assert attorney-client privilege or work product protection by asserting an advice of counsel defense. The answers of the representatives of Travelers to leading, cross-examination questions during depositions in which the representatives admitted that advice of counsel influenced their decision making process is not equivalent to "affirmatively [raising] the issue involving privileged communications," *Dion v. Nationwide. Mut. Ins. Co.*, 185 F.R.D. at 295. Nor does this rise to the level of impliedly raising an advice of counsel defense.[1]

## II. Documents authored by Clark after Service of the Complaint

Barnard asserts that it is entitled to all "Ron Clark documents" up until the

---

[1] Whether such information can be admitted during trial without waiving the privilege is a different matter. *See Dion*, 185 F.R.D. at 295 (holding that "Where an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of counsel, it cannot deny an opposing party 'an opportunity to uncover the foundation for those assertions in order to contradict them.'" ).

time that Travelers formally denied the claim. The Court concludes, however, that Travelers is entitled to work product protection with respect to all documents authored by Clark after Travelers had notice of Barnard's complaint against it. The Court adopts the date of service of process, February 22, 2013, as the date that Travelers first had notice of the complaint. Documents generated after Travelers had notice of the complaint were made in anticipation of litigation and Barnard cannot show a compelling need for the documents because the mental impressions of Clark are not directly at issue. *Palmer*, 861 P.2d at 912. Accordingly, all documents authored by Clark after Travelers had notice of the complaint are protected from discovery by the work product doctrine and need not be produced.

Travelers contends that litigation was anticipated before service of process, but currently fails to meet its burden in this regard. The Court rejects Traveler's contention that Barnard's earlier expression of general dissatisfaction with the claim handling process demonstrates that the parties had a "resolve to litigate" prior to Barnard's filing of the complaint. *Moe*, 270 F.R.D. at 626. Additionally, while Barnard's complaint was filed on January 15, 2013, Travelers offers no evidence that it had any notice of the complaint until the complaint was formally served on February 22, 2013.

Barnard's motion to compel documents authored by Clark after February

22, 2013 is denied. If Travelers can supply specific evidence showing that it had notice of Barnard's complaint on some date prior to formal service of process, then the Court will amend its ruling to protect all documents authored by Clark from the date that Travelers had notice of Barnard's complaint. Travelers must submit any such evidence of earlier notice of the complaint within ten days of the date of this Order. Otherwise, February 22, 2013 will serve as the date from which work product protection applies to documents authored by Clark.

### III. Remaining Documents

The Court must determine whether the following remaining categories of documents deserve protection from discovery:

**A. Documents authored by Travelers' representatives[2] prior to August 23, 2013 not involving Clark for which Travelers claims only work product protection.**

The Court orders that all documents within the above-described category be produced to Barnard. The work product doctrine does not protect from discovery documents authored by Travelers' representatives prior to Travelers' formal denial of the claim. Barnard has a compelling need for such documents because the facts and mental impressions of Travelers' representatives are directly at issue in this bad faith litigation. *Holmgren*, 976 F.2d at 577. Within ten days from the date of

---

[2] The term "Travelers' representatives" does not include Joe Salko, who is not the subject of Barnard's motion and who appears to serve as Travelers' in-house counsel.

this Order, Travelers must produce all documents authored by Travelers representatives before August 23, 2013 for which Travelers claims only work product protection.[3]

> **B.  Documents authored by Travelers' representatives at any time not involving Clark for which Travelers claims attorney client privilege, or attorney client privilege and work product protection.**

Documents in this category are not the subject of this motion. Many of these documents involve communications with Joe Salko or Marshall Mickelson. These documents need not be produced or submitted for an *in camera* review.

> **C.  Documents authored by Travelers' representatives before August 23, 2013 sent to or carbon copying Clark for which Travelers claims attorney-client privilege, or attorney-client privilege and work product protection.**

The Court orders that all documents within the above-described category be submitted for an *in camera* review within ten days of the date of this Order. Again, Joe Salko is not considered a Travelers representative for purposes of compliance with this Order. As noted above, the work product doctrine does not protect from discovery documents authored by Travelers' representatives before Travelers formally denied the claim. Thus, the Court's review of documents in

---

[3] The Court realizes that this holding implicates some documents that are not the subject of this motion, see e.g. TRAV-000390, TRAV-DM000178-000179, but the Court orders production of these documents in the interest of judicial economy.

-15-

this category will be solely for the purpose of determining whether the attorney-client privilege applies. To deserve protection, such documents must contain confidential communications for the purpose of seeking legal advice.

### D. Documents authored by Clark prior to Travelers' notice of Barnard's complaint for which Travelers claims attorney-client privilege, work product protection, or both.

The Court orders that all documents within the above-described category be submitted for an *in camera* review within ten days of the date of this Order. The presumptive date that Travelers had notice of the complaint is February 22, 2013, unless Travelers supplies specific evidence to the contrary as ordered in part II. For the reasons explained in part II above, documents within this category for which Travelers claims only work product protection will likely be subject to discovery, but the Court will first review these documents *in camera* in order to appropriately rule on Travelers' motion to preclude Clark's deposition. The Court will also review documents in this category for which Travelers claims attorney-client privilege to determine if the privilege applies. If the documents do not contain confidential communications for the purpose of rendering legal advice, the Court will order that they be produced.

## CONCLUSION

In sum, the Court orders that

(1) Travelers need not produce any documents authored by Clark after Travelers had notice of Barnard's complaint.  Barnard's motion with respect to this category of documents is DENIED.

(2) Within ten days of the date of this Order, Travelers shall produce all documents not involving Clark authored by Travelers' representatives before August 23, 2013 for which Travelers claims only work product production.

(3) Within ten days of the date of this Order, Travelers shall submit for an *in camera* review all documents authored by Travelers' representatives before August 23, 2013 sent to or carbon copying Clark for which Travelers claims attorney-client privilege, or attorney-client privilege and work product protection.

(4) Within ten days of the date of this Order, Travelers shall submit for an *in camera* review all documents authored by Clark prior to Travelers' notice of Barnard's complaint for which Travelers claims attorney-client privilege, work product protection, or both.  This means that Travelers must submit to the Court all documents authored by Clark before February 22, 2013, unless Travelers provides to the Court specific evidence demonstrating that Travelers had notice of the complaint before service of process.

The Court will determine, following the *in camera* review, which documents, in whole or in part, will be produced to Barnard.  Furthermore, once the Court has had the opportunity to review the documents *in camera*, the Court

will be in a better position to rule on Travelers' motion to preclude the deposition of Clark.

IT IS ORDERED that Barnard's motion to Compel is GRANTED and DENIED in part as specified above.

DATED this 17th day of April, 2014.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court